IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LANTER DISTRIBUTING, LLC, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Case No. 20-cv-619-RJD |
| LAZER SPOT, INC., | ) ) |
|     Defendant. | ) ) ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 36). Plaintiff filed a Response (Docs. 39 and 40). Defendant filed a Reply (Docs. 41 and 42). Defendant's Motion (Doc. 36) is GRANTED IN PART AND DENIED IN PART.

**Background**

In March 2016, Plaintiff Lanter Distributing, LLC ("Lanter") and Defendant Lazer Spot, Inc. ("Lazer Spot") entered into a contract titled "Trailer Interchange Agreement" (Doc. 36-2, pp. 1,3). The parties agreed that "either party may interchange the other party's owned, leased, or controlled trailers" subject to certain conditions (*Id*. p. 1). The following conditions are relevant to Defendant's summary judgment motion:

> 4. Use and Return
> If the Equipment is not returned by either party and it becomes necessary for the other party to provide for the Equipment return, all costs incurred in the return of the Equipment will be the responsibility of the party that did not timely return the Equipment.
>
> 5. Responsibilities

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

b. Each party will exercise reasonable care while the other party's equipment is in its custody and control.  Each party agrees to return equipment to the other party in the same condition in which it was received, ordinary wear and tear excepted.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

6. Indemnification
Each party will indemnify the other party for its own negligence or willful misconduct, and not the negligence or actions of others. Each party will indemnify, defend, and hold the other party harmless from and against any and all loss, damage, liability, cost or expense, including but not limited to attorney's fees, proximately caused by the indemnifying party's negligence or willful misconduct.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

8. Equipment-Loss or Damage
Each party shall be responsible for all damages and losses, occurring while the Equipment is in its possession or control, to the extent that such damage or loss is proximately caused by that party's negligence or willful misconduct.  In the event of loss of Equipment, the responsible party shall pay to the other party the commercial value of the trailer at the time it was interchanged.

(Doc. 36-2, pp. 1, 2).   The contract terminated in August 2018 (Doc. 40, p.1, ¶2).   From March 25, 2016-August 2018, Lazer Spot took possession and control over certain Lanter trailers (Doc. 1, ¶8; Doc. 19, p. 1, ¶8).

Lanter alleged in its Complaint that some of the Lanter trailers "in Lazer Spot's possession and control…were damaged" (Doc. 1, ¶15).   Richard Klene, Lanter's chief financial officer, testified at his deposition that he did not know who damaged those trailers or when the damage occurred (Doc. 36-5, pp. 36:13-17, 39:5-12).   Joseph Lamotte (operations manager for Lanter at its Bolingbrook, Illinois facility) testified at his deposition that he relied upon the drivers to report any damage to the trailers, but the drivers did not "always" report damage (Doc. 36-3, pp. 66:17-

Page **2** of **12**

67:2, pp. 78:24-79: 13). He does not recall whether any of the Lanter trailers used by Lazer Spot were damaged (Doc. 36-3, p. 83: 16-84:1).

Lanter further alleged in its Complaint that "due to the negligence of Lazer Spot and the failure to fulfill its contractual obligations, six of the trailers placed in Lazer Spot's possession or control cannot be found" (Doc. 1, ¶13). Eric Behrmann, Lanter's vice-president, testified at his deposition that "we brought those six trailers as shown in documentation to the Unilever lot that Lazer Spot was managing the yard for…Lazer Spot then took possession of those trailers, and they were never returned back to us" (Doc. 36-4, pp: 79:21-80:9). Stefanie Newsome-Ryan, Lazer Spot's vice-president of administration, explained that the "Unilever lot" is a factory that is fenced and has one single entrance/exit point (Doc. 40-1, p. 7:1-3, p. 13:1-20,  p. 14:6-13). Lazer Spot manages the lot by providing "spotting service at the factory" and running "short shuttles for Unilever to pick up raw material, and some of those shuttles take some outbound finished product to an offsite warehouse"[1] (Doc. 40-1, p. 13: 1-10). Lazer Spot also manages the "welcome center" at the lot (Doc. 40-1, p. 13:14-17). Lazer Spot started managing the Unilever lot in 2006 (Doc. 40-1, pp. 16:23-17:1).

**Legal Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).

---

[1] Newsome-Ryan explained that "spotting" involves "a specialized yard tractor that is in the confines of the facility…and they move trailers to and from doors" (Doc. 40-1, p. 8: 7-14). The "short shuttle" involves using a "day cab trailer" to move trailers to and from an overflow lot for "storage, loading, unloading, etc." (Doc. 40-1, p. 8: 6-22).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Summary judgment may be granted on "part of a claim or defense." FED. R. CIV. P. 56(a); *Ford v. Marion Co. Sheriff's Office*, 942 F.3d 839, 849 (7th Cir. 2019). The Court may also order that "an item of damages or other relief…is not genuinely in dispute." FED. R. CIV. P. 56(g).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Rule 56 contains the following requirements for supporting or opposing a motion for summary judgment:

> **(c) Procedures.**
>
>> **(1) *Supporting Factual Positions*.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>>
>>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>>
>>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>>
>> **(2) *Objection That a Fact Is Not Supported by Admissible Evidence*.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>>
>> **(3) *Materials Not Cited*.** The court need consider only the cited materials, but it may consider other materials in the record.

Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." Only admissible evidence can defeat a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

## Discussion

Lanter alleges that "Lazer Spot's failure to return the trailers and failure to exercise reasonable care while the trailers were in its custody and control constitute breaches of the Contract" (Doc. 1, ¶20). This matter is before the Court on diversity jurisdiction grounds, and because neither party raises a choice-of-law issue, the Court will apply Illinois substantive law to Lanter's breach of contract claim. *Selective Ins. Co. of South Carolina v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016) (internal citations omitted). Under Illinois law, Plaintiff must establish "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." *Fednav Intern. Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) (internal citations and quotations omitted). Lazer Spot contends that no genuine issue of material fact exists regarding whether Lanter's damaged trailers and lost trailers constitute a breach of the contract. Lazer Spot further contends that Lanter has not established resultant damages, nor is it entitled to attorney's fees.

**Damaged trailers**

Lazer Spot agreed that it would be "responsible for all damages and losses, occurring while the Equipment is in its possession or control, to the extent that such damage or loss is proximately caused by [Lazer Spot's] negligence or willful misconduct" (Doc. 36-2, p. 8). In its summary judgment motion, Lazer Spot points to the deposition testimony of Lanter's CFO Richard Klene (he does not know who damaged the trailers at issue or when the damage occurred) and Operations

Manager Joseph Lamotte (he does not remember if any of the trailers used by Lazer Spot were damaged). It is clear from Lanter's pleadings that no direct evidence indicates Lanter's trailers were damaged by Lazer Spot's negligence or willful misconduct. Instead, Lanter's argument against summary judgment is based solely on its contention that the allegedly damaged trailers were "discovered to be damaged in July and/or August 2018…while in Lazer Spot's possession or control" and "at the yard managed by Lazer Spot" (Doc. 40, p. 2). The contract required Lazer Spot to "return equipment to [Lanter] in the same condition in which it was received, ordinary wear and tear excepted" (Doc. 36-2, p. 1).

To support its contention that damage to the trailers was discovered while they were in Lazer Spot's possession/control, Lanter cites to the following testimony from Richard Klene:

> Q: So these are what I have that was produced to us, Exhibit H. First of all, there's some handwriting on there. Is that your handwriting?
>
> A: No.
>
> Q: No. Do you have any idea whose handwriting it might be?
>
> A: I do not.
>
> Q: Some of these invoices are from Milestone Trailer. Yeah they all are. Looks like these are from Milestone Trailer. So are these invoices for, you know, the trailer was checked back in, they go through and look at it, and if they have to repair things, they send you the invoice for it?
>
> A: Correct.
>
> ********
>
> Q: All right. So have you ever gone through and taken out items that would be considered wear and tear from these Milestone Invoices that we see here in exhibit H?
>
> A: It is my understanding that's what all these marks are and that's why this is adjusted from the total bill.

> Q: Perfect. Okay. So that's what we're doing here in this handwriting is we're taking out wear and tear, and we're just coming up with what would be something more.
>
> A: Correct.

(Doc. 36-5, p. 30: 8-12, p. 31: 9-20).[2] Next, Lanter cites "Exhibit K" in its entirety, which is a seven-page document consisting of repair invoices; most are dated in July/August 2018 (Doc. 40-11). Then Lanter cites the following deposition testimony by Stefanie Newsome Gray, Lazer Spot's vice-president of administration:

> A: All the trailers we have on site at some point have had damage.
>
> ******
>
> A: Every day trailers get damaged when they're on property at a facility, at any facility we operate.
>
> ******
>
> Q: But you know that it's happening? I mean, you said earlier that every trailer practically every day gets damaged?
>
> A: Yes. It happens at all of our facilities.

(Doc. 40-1, p. 40: 19-20, p. 41: 2-3, p. 52: 9-12).

None of the cited evidence provides any indication that Lazer Spot returned trailers to Lanter in a different condition than when Lazer Spot took possession/control of them. At most, Klene's testimony and Exhibit K show that *some* of Lanter's trailers were damaged beyond ordinary wear and tear at *some point* prior to August 2018, but Lanter provides no evidence to connect those invoices to Lazer Spot's purported control over the trailers. Newsome-Gray's

---

[2] Lanter also points the Court to its Supplemental Response to Interrogatory #7 (and a passage in Klene's deposition where he discusses the response) that states the repair invoices totaled $5,917.10 (Doc. 40, p. 5, ¶13). Lanter provides no explanation regarding how this information shows Lazer Spot possessed/controlled the trailers at the time they were damaged.

testimony establishes that trailers, generally, are damaged at the Unilever spot.  However, she gave this testimony in the context of answering questions about Lazer Spot's trailers that were allegedly damaged by Lanter, and as she explained that over-the-road drivers are not likely to report minor collisions because they fear losing their jobs (Doc. 40-1, p. 40:3-25).   To the extent that frequent (or even daily) damage to trailers at the Unilever lot has some significance to the issue of whether Lazer Spot controlled/possessed Lanter's trailers at the time they sustained the specific damage at issue in this case, that significance has not been established by citations to the record.

In sum, Lanter failed to produce evidence from which the jury could reasonably infer that Lazer Spot controlled/possessed Lanter's trailers when they were damaged, or that Lazer Spot failed to return equipment to Lanter in the same condition in which it was received, ordinary wear and tear excepted.   Defendant's Motion for Summary Judgment regarding the damaged trailers is GRANTED.

**Lost Trailers**

Similar to its argument regarding the damaged trailers, Lazer Spot contends that because Lanter does not know who "took" the missing trailers or when they were lost, it cannot establish that Lazer Spot breached the contract.   Lazer Spot's argument does not carry the same weight in the context of the lost trailers, because Lanter *has* provided evidence that Lazer Spot "lost" the trailers.   Eric Behrmann (Lanter's vice-president) testified that "we brought those six trailers as shown in documentation to the Unilever lot that Lazer Spot was managing the yard for…Lazer Spot then took possession of those trailers, and they were never returned back to us (Doc. 36-4, p. 79: 21-80: 5).   The contract required Lazer Spot to return Lanter's trailers.   Behrmann's testimony creates a genuine dispute of material fact regarding whether Lazer Spot failed to return

Lanter's trailers.

In its Reply, Lazer Spot claims "the records to which Mr. Behrmann is referring only purport to show that a trailer left a Lanter lot and do not indicate that it ultimately arrived at the Unilever lot" (Doc. 42, p.7). Then Lazer Spot cites the following deposition testimony from Joseph Lamotte, operations manager:

> Q: Okay, and do you-well, these records wouldn't tell us obviously where they ended up or we wouldn't be here, right? But this would tell us the last time they left Bolingbrook or came into Bolingbrook.
>
> A: Correct.

Beyond its bare assertion, Lazer Spot provides no evidence to the Court to establish Mr. Behrmann and Mr. Lamotte were referring to the same records. Even if Lazer Spot had provided such evidence, Mr. Behrmann's testimony creates a genuine issue of material fact regarding whether Lazer Spot controlled/possessed the trailers at the time they were lost.

Lazer Spot next argues that Lanter failed to establish it sustained damages as a result of the lost trailers. Lanter cannot recover in this matter unless it proves that it suffered "an *actual* loss resulting from the breach." *Morse v. Donati*, 2019 IL App (2d) 180328, ¶18 (internal citations omitted) (emphasis in the original). Damages in a breach of contract action are "intended to place the nonbreaching party in the same position as if the contract had been performed." *Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 2019 IL App (1st) 172858, ¶44 (internal citations omitted).

Lanter did not own the lost trailers, but leased them pursuant to "rental agreements where you could turn them back when your business stopped" (Doc. 36-5, p. 21:9-16). The lost trailers were "dry" (non-refrigerated trailers), and the Lanter operation in Bolingbrook has not used dry trailers since 2018 (Doc. 36-3, p. 43:2144:7-14). However, because the "dry" trailers were

missing, Lanter could not cancel the rental agreements (Doc. 36-5, p. 19:9-20:16). Consequently, Lanter had to continue paying the rental fees for trailers it did not have (and no longer needed).[3] This evidence creates a genuine issue of material fact regarding whether Lanter suffered resultant damages from Lazer Spot's alleged breach of the contract. Defendant's Motion for Summary Judgment regarding the lost trailers is DENIED.

**Attorney fees**

In a breach of contract suit, attorney fees are recoverable if there is a provision in the contract that explicitly provides for attorney fees. *Downs v. Rosenthal Collins Group, LLC*, 385 Ill. App.3d 47, 50-52 (1st Dist. 2008). In paragraph six of the "Trailer Interchange Agreement" (Doc. 36-2), the parties agreed that attorney fees were recoverable under the following circumstances:

> 6. Indemnification
> Each party will indemnify the other party for its own negligence or willful misconduct, and not the negligence or actions of others. Each party will indemnify, defend, and hold the other party harmless from and against any and all loss, damage, liability, cost or expense, **including but not limited to attorney's fees**, proximately caused by the indemnifying party's negligence or willful misconduct.

(emphasis added). An indemnification agreement applies to claims brought by the parties against each other, in addition to third-party claims, unless the agreement states otherwise. *Water Tower Realty Co. v. Fordham 25 E. Superior, LLC*, 404 Ill.App.3d 658, 666 (1st Dist. 2010). Accordingly, Lanter may recover attorney fees if it can establish that Lazer Spot negligently "lost" the trailers.

Arguing that it should be awarded summary judgment on Lanter's claim for attorney fees, Lazer Spot points to paragraph eight of the contract that provides "[e]ach party shall be responsible

---

[3] Once the cost of the rental fees exceeded the value of the trailers, Lanter stopped making payments on the leases (Doc. 36-5, p. 21: 2-8).

for all damages and losses" proximately caused by its negligence or willful misconduct "while the Equipment is in its possession or control." Lazer Spot contends that because paragraph six (allowing attorney fees) refers to "negligence or willful misconduct" while paragraph eight (generally providing for damages and losses) requires both "possession or control" of the equipment *and* "negligence or willful misconduct," that paragraph six somehow renders paragraph eight meaningless. The Court disagrees. Paragraph eight provides instruction for the parties when determining between themselves (perhaps even without their attorneys) who is liable for damage/lost property. Paragraph 6 is broader; in addition to providing for indemnification in third-party claims, it allows for, *inter alia*, recourse if one or both parties breach paragraph eight and attorney intervention is necessary.

The Court presumes that all provisions in a contract "were intended for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions." *Lobo IV, LLC v. V Land Chicago Canal*, LLC, 2019 IL App (1st) 170955, ¶66 (internal citations omitted). To resolve Plaintiff's breach of contract claim regarding the lost trailers, both paragraphs six and eight can be given effect. All the evidence presented to the Court reflects that without establishing the trailers were in Lazer Spot's possession or control, Lanter cannot establish that Lazer Spot's negligence resulted in the loss of the trailers. Consequently, it is unnecessary for this Court to reconcile the provisions of the contract because paragraph 6 and 8 do not conflict in this matter. Defendant's Motion for Summary Judgment regarding Plaintiff's request for attorney fees is DENIED.

## CONCLUSION

Lazer Spot's Motion for Summary Judgment regarding Lanter's claim for damaged trailers is GRANTED. Lazer Spot's Motion for Summary Judgment regarding Lanter's claim

for lost trailers and attorney fees is DENIED.

**IT IS SO ORDERED.**

**DATED:   November 16, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**